# CONSOLIDATED RAIL CORPORATION ET AL. *v.* NATIONAL ASSOCIATION OF RECYCLING INDUSTRIES, INC., ET AL.

No. 80–568.  Decided January 26, 1981

PER CURIAM.

Section 204 of the Railroad Revitalization and Regulatory Reform Act of 1976, Pub. L. 94–210, 90 Stat. 40, note following 45 U. S. C. § 793, directed the Interstate Commerce Commission to conduct an investigation to determine whether the rail rate structure for recyclable and competing virgin materials unjustly discriminates against recyclables or whether such rates are unreasonable, and, if found to be so, to require the removal of any such defect from the structure. The Act demonstrated congressional concern that rail rates may have been unjustly impeding the movement of recycled materials in a market of diminishing virgin resources. S. Rep. No. 94–499, p. 51 (1975).

After conducting the investigation required by §§ 204 (a) (1) and (2), the Commission concluded that the rail rate structure was neither discriminatory with respect to recyclable materials, nor, with few exceptions, unreasonable. *Investigation of Freight Rates for the Transportation of Recyclable or Recycled Commodities,* 356 I. C. C. 114 (1977). The Court of Appeals for the District of Columbia Circuit reversed, finding that the Commission had applied an overly restrictive definition of "competitive" in assessing whether particular commodities were comparable for purposes of determining discrimination, and that the Commission had improperly shifted the burden of proof from the railroads. *National Association of Recycling Industries, Inc.* v. *ICC,* 190 U. S. App. D. C. 118, 585 F. 2d 522 (1978). The case was remanded with orders to the Commission to conduct an expedited investigation which would remedy these errors.

On remand, the Commission found that certain recyclable materials were being discriminated against in the rate structure and concluded that, in general, rates for transportation of recyclables were unreasonably high if they produced a revenue-to-variable cost ratio exceeding 180%. The Commission ordered the elimination of all rate discrimination and

ordered that rates for recyclable materials which produced revenue in excess of the 180% ratio be reduced accordingly. *Investigation of Freight Rates for Transportation of Recyclable or Recycled Commodities,* 361 I. C. C. 238 (1979). In eliminating the discrimination, the railroads were free to use any combination of raising or lowering rates which would equalize rates for recyclable and competing virgin materials, so long as the resulting rate would not be unreasonable. *Investigation of Freight Rates for Transportation of Recyclable or Recycled Commodities,* 361 I. C. C. 641 (1979). Under this approach, the railroads could raise the rates for recyclable material and competing virgin material to a level above the previous levels for either commodity, if the new rate did not produce revenue in excess of the 180% ratio.

The Court of Appeals affirmed with respect to the Commission's findings on discrimination. *National Association of Recycling Industries, Inc. v. ICC,* 201 U. S. App. D. C. 342, 627 F. 2d 1328 (1980). However, the court found fault with the scope of the Commission's remedy for eliminating discrimination and with the Commission's failure adequately to justify the 180% ratio as indicative of reasonableness. The court revoked all rate increases for recyclable material put into effect pursuant to those perceived errors and remanded for further proceedings. In a supplementary order, the court made it clear that the central task on remand would be to determine whether the 180% ratio, or some other formula, provided the appropriate standard for determining reasonableness. Until such a standard had been adequately justified, the court enjoined implementation of any rate increase for recyclable material, excepting one caused by a general rate increase.

The railroads sought certiorari, challenging only those aspects of the Court of Appeals' decision which revoked or enjoined rate increases.* The argument is that the lower

---

*On October 14, 1980, the President signed into law the Staggers Rail

court was without authority to enter such orders. We agree. The authority to determine when any particular rate should be implemented is a matter which Congress has placed squarely in the hands of the Commission. *Arrow Transportation Co.* v. *Southern R. Co.,* 372 U. S. 658, 662–672 (1963). While the Court of Appeals was not without power to order further proceedings to determine the propriety of the 180% ratio standard, the court stepped beyond the proper exercise of its power when it revoked rates implemented under the standard and enjoined any further increases toward the 180% level. The basis for these remedies was the court's conclusion that the Commission had failed to adequately support the choice of the 180% figure. That standard was not rejected outright; the court's opinion leaves open the possibility that the 180% ratio may eventually prevail.

Under the above circumstances, there is no basis in our prior decisions for the revocation order or for the injunction against further increases. "If a reviewing court cannot discern [the Commission's] policies, it may remand the case to the agency for clarification and further justification of the departure from precedent. . . . When a case is remanded on the ground that the agency's policies are unclear, an injunction ordinarily interferes with the primary jurisdiction of the Commission." *Atchison, T. & S. F. R. Co.* v. *Wichita Board of Trade,* 412 U. S. 800, 822 (1973); see *United States* v. *SCRAP,* 412 U. S. 669, 690–698 (1973); *Arrow Transportation Co.* v. *Southern R. Co., supra;* see also *Southern R. Co.* v. *Seaboard Allied Milling Corp.,* 442 U. S. 444 (1979).

Act of 1980, Pub. L. 96–448, 94 Stat. 1895. Section 204 of the Act amends 49 U. S. C. § 10731 (1976 ed, Supp. III) so as to provide guidelines under which the Commission must develop a new revenue-to-variable cost standard for all recyclables excepting iron and steel scrap. Congress has estimated that that ratio would not exceed 160%. S. Rep. No. 96–470, p. 34 (1979). Although the Act may result in the Commission's adoption of a standard lower than 180%, that factor has no bearing on the Court of Appeals' power to revoke or enjoin the rate increases at issue here.

Here, the court was dissatisfied with the Commission's justification for adopting the 180% standard, and the case was remanded for further proceedings which could either produce a new standard or clarify the basis for the 180% ratio. Such a posture provides no basis for either revoking or enjoining rate increases under the above authorities. Accordingly, the petition for a writ of certiorari is granted, those portions of the Court of Appeals decision revoking or enjoining rate increases are vacated, and the case is remanded for proceedings consistent with the immediate disposition.

*So ordered.*

JUSTICE POWELL took no part in the consideration or decision of this case.